UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

ELSA BETANZOS,
KIMBERLY NEWKIRK, and
BETH WALKER,

       Plaintiffs,                                   CASE NO.:

vs.

CONVIVA PHYSICIAN GROUP LLC,
a Florida Limited Liability Company

       Defendant.
_____/

## COMPLAINT

COMES NOW the Plaintiffs, ELSA BENTANZOS (hereinafter "BETANZOS"), KIMBERLY NEWKIRK (hereinafter "NEWKIRK"), and BETH WALKER (hereinafter "WALKER") (hereinafter collectively referred to as "PLAINTIFFS"), by and through the undersigned Counsel, and sue the Defendant, CONVIVA PHYSICIAN GROUP LLC, a Florida Limited Liability Company, (hereinafter "CONVIVA" or "Defendant"), and alleges the following:

## JURISDICTION AND VENUE

1.    This is a civil action with damages that exceed Fifteen Thousand Dollars ($15,000.00), exclusive of interest and costs.

2.    This Court is vested with federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331 for Plaintiff's claims arising under the following: the Age Discrimination in Employment Act, 29 U.S.C. §§ 621-634 and the Americans with Disabilities Act, as amended, 42 U.S.C. § 12101 et seq. This Court has supplemental jurisdiction over Plaintiff's related claims arising under state and local laws pursuant to 28 U.S.C. § 1367.

3.      Venue lies within the Southern District of Florida, West Palm Beach Division, pursuant to 28 U.S.C. § 1391(b) because all actions relevant giving rise to this claim arose in this Judicial Circuit.

**ADMINISTRATIVE PREREQUISITES**

4.      All conditions precedent to the maintenance of this action have been met.

5.      On or about April 8, 2021, Plaintiff, BETANZOS, timely filed a Charge of Discrimination with both the Palm Beach County Office of Equal Opportunity ("OEO") and the U.S. Equal Employment Opportunity Commission ("EEOC").  A copy of said Charge is attached hereto as **Exhibit "A"**.

6.      A Notice of Dismissal was issued with regard to BETANZOS' Charge of Discrimination following BETANZOS' request for the issuance of a Right to Sue Notice. A copy of the Notice of Dismissal is attached hereto as **Exhibit "B"**.

7.      On or about July 27, 2021, the EEOC issued a Notice of Right to Sue.  A copy of said Notice of Right to Sue is attached hereto as **Exhibit "C"**.

8.      This Complaint is being filed within ninety (90) days of receipt of the Notice of Right to Sue.

9.      On or about April 8, 2021, Plaintiff, NEWKIRK, timely filed a Charge of Discrimination with both the Palm Beach County Office of Equal Opportunity ("OEO") and the U.S. Equal Employment Opportunity Commission ("EEOC").  A copy of said Charge is attached hereto as **Exhibit "D"**.

10.      A Notice of Dismissal was issued with regard to NEWKIRK's Charge of Discrimination following NEWKIRK's request for the issuance of a Right to Sue Notice. A copy of the Notice of Dismissal is attached hereto as **Exhibit "E"**.

11.     On or about July 27, 2021, the EEOC issued a Notice of Right to Sue.  A copy of said Notice of Right to Sue is attached hereto as **Exhibit "F"**.

12.     This Complaint is being filed within ninety (90) days of receipt of the Notice of Right to Sue.

13.     On or about April 8, 2021, Plaintiff, WALKER, timely filed a Charge of Discrimination with both the Palm Beach County Office of Equal Opportunity ("OEO") and the U.S. Equal Employment Opportunity Commission ("EEOC").  A copy of said Charge is attached hereto as **Exhibit "G"**.

14.     A Notice of Dismissal was issued with regard to WALKER's Charge of Discrimination following WALKER's request for the issuance of a Right to Sue Notice. A copy of the Notice of Dismissal is attached hereto as **Exhibit "H"**.

15.     On or about July 27, 2021, the EEOC issued a Notice of Right to Sue.  A copy of said Notice of Right to Sue is attached hereto as **Exhibit "I"**.

16.     This Complaint is being filed within ninety (90) days of receipt of the Notices of Right to Sue.

## **PARTIES**

17.     Plaintiff, ELSA BETANZOS, is an individual who resided in Palm Beach County, Florida, during the time of her employment with CONVIVA.

18.     Plaintiff, KIMBERLY NEWKIRK, is an individual who resided in Palm Beach County, Florida, during the time of her employment with CONVIVA.

19.     Plaintiff, BETH WALKER, is an individual who resided in Palm Beach County, Florida, during the time of her employment with CONVIVA.

20.     At all times herein mentioned, PLAINTIFFS were employed by CONVIVA located at 7031 Washington Avenue, Lantana, Florida 33462.

21.     BETANZOS was and is a member of a group protected under the Age Discrimination and Employment Act of 1967, 29 U.S.C. §§ 621-634 (ADEA), the Americans with Disabilities Act, as amended, 42 U.S.C. § 12101 et seq. and the Florida Civil Rights Act, Fla. Stat. Ann. § 760.01 (FCRA)'s prohibitions against age discrimination and a hostile work environment. Namely:

    a.  She was sixty-two (62) years of age at the time she was terminated;

    b.  She suffers from medical conditions including Thyroid Cancer and Diverticulitis; and

    c.  She suffered an adverse employment action after experiencing hostility in the workplace due to her age and disability through unfavorable treatment compared to her younger and non-disabled colleagues.

22.     NEWKIRK was and is a member of a group protected under the Age Discrimination and Employment Act of 1967, 29 U.S.C. §§ 621-634 (ADEA), the Americans with Disabilities Act, as amended, 42 U.S.C. § 12101 et seq., and the Florida Civil Rights Act, Fla. Stat. Ann. § 760.01 (FCRA)'s prohibitions against age discrimination and a hostile work environment. Namely:

    a.  She was fifty-seven (57) years of age at the time she was terminated;

    b.  She suffers from medical conditions including kidney disease, prior back surgery, and two prior knee replacements; and

     c.   She suffered an adverse employment action after experiencing hostility in the workplace due to her age and disability through unfavorable treatment compared to her younger and non-disabled colleagues.

23.    WALKER was and is a member of a group protected under the Age Discrimination and Employment Act of 1967, 29 U.S.C. §§ 621-634 (ADEA), the Americans with Disabilities Act, as amended, 42 U.S.C. § 12101 et seq., and the Florida Civil Rights Act, Fla. Stat. Ann. § 760.01 (FCRA)'s prohibitions against age discrimination and a hostile work environment. Namely:

     a.   She was sixty (60) years of age at the time she was terminated;

     b.   She suffers from medical conditions including Heart Disease, COPD, and two previous heart attacks; and

     c.   She suffered an adverse employment action after experiencing hostility in the workplace due to her age and disability through unfavorable treatment compared to her younger and non-disabled colleagues.

24.    CONVIVA is duly authorized and licensed to do business in Palm Beach County, Florida.  At all times material, CONVIVA was and is engaged in the business of providing healthcare services with more than twenty (20) employees.  As such, CONVIVA is an "employer" as defined by the ADEA, the ADA, and the FCRA.

## **GENERAL ALLEGATIONS**

**Elsa Betanzos**

25.    BETANZOS was employed at CONVIVA on a continuous basis for more than thirteen (13) years from December 19, 2007 through November 23, 2020.

26.     In 2007, BETANZOS was hired by CONVIVA, known at that time as Humana Medical Plan, Inc., as a Patient Advocate and Medical Assistant Floater.

27.     In 2017, CONVIVA notified BETANZOS that she would be required to become a Registered Medical Assistant and pass the board test or face termination. BETANZOS trained herself, passed the board, and became a Registered Medical Assistant.

28.     In August/September 2020, BETANZOS received a call from Human Resources about discriminatory treatment from the Administrator, Diana Gonzalez, who was under investigation. BETANZOS participated in the investigation, sharing her opinion of Gonzalez's leadership and treatment toward employees such as herself.

29.     In November 2020, BETANZOS was notified that an employee of CONVIVA, Winsome Martin, a lab tech, had been diagnosed with COVID-19 after drawing blood outside of the facility. CONVIVA advised BETANZOS that it was conducting an investigation into Martin's actions and the potential spread of COVID-19 in the workplace.

30.     Shortly thereafter, BETANZOS became very ill with diverticulitis. BETANZOS notified Ms. Gonzalez immediately, who was hesitant to allow BETANZOS to leave work due to short staffing. BETANZOS was admitted to the hospital later the same day.

31.     Later in November 2020, BETANZOS received a telephone call from the Human Resources Department, directing her to engage in a confidential conversation regarding the investigation into Ms. Martin.

32.     Although the investigation pertained to a third party and the potential spread of COVID-19 in the workplace, CONVIVA began questioning BETANZOS about her own actions with regard to drawing blood outside the facility.

33.    BETANZOS provided truthful answers during the phone call, including responding that she had drawn blood from someone outside of the facility. BETANZOS confirmed she had drawn her husband's blood at home while he was a patient at the facility and with the consent of his doctor. The last time that this had occurred was over a year prior to BETANZOS call with the Human Resources Department.

34.    Without further follow-up, discussion, or investigation, CONVIVA subsequently terminated BETANZOS' employment on November 23, 2020.

35.    By all accounts, BETANZOS excelled at her position, having not received a single disciplinary warning during any of the thirteen (13) years that she was employed by CONVIVA from December 2007 through November 23, 2020. Notwithstanding, on November 23, 2020, CONVIVA terminated BETANZOS not as a result of her performance but due to improper discriminatory and illegal reasons.

36.    On November 23, 2020, CONVIVA terminated BETANZOS' position, using the investigation of an unrelated third-party as a pretext for the termination although BETANZOS consistently accomplished her work tasks, was regularly complimented on her work ethic and commitment to the company, and had completed the blood draw, over a year prior, with the permission of the patient's doctor and CONVIVA management.

37.    On the same day as BETANZOS' termination, two other medical assistants who are over the age of fifty, also suffer disabilities, and who had recently requested reasonable accommodations for their disabilities, namely Plaintiffs, NEWKIRK and WALKER, were also terminated under the same pretext.

38.     CONVIVA's termination of BETANZOS was not as a result of her performance but due to improper discriminatory and illegal reasons. Specifically, CONVIVA targeted and terminated BETANZOS under pretext as a result of her age and disability.

**Kimberly Newkirk**

39.     NEWKIRK was employed at CONVIVA on a continuous basis for more than thirty-four (34) years from July 9, 1986 through November 23, 2020.

40.     In 1986, NEWKIRK was hired by CONVIVA, known at that time as Humana Medical Plan, Inc., as a Registered Medical Assistant. NEWKIRK served in this capacity up to and until her termination.

41.     NEWKIRK dedicated a large portion of her life to CONVIVA (and its prior entities), and by all accounts, was always recognized as hardworking, committed, and dedicated to her job. NEWKIRK consistently accomplished her work tasks and was regularly complimented on her work ethic and commitment to the company.

42.     In end of July/August 2020, Newkirk received a call from Human Resources about discriminatory treatment from the Administrator, Diana Gonzalez, who was under investigation. BETANZOS participated in the investigation, sharing her opinion of Gonzalez's leadership and treatment toward employees such as herself.

43.     In or around late September or early October, NEWKIRK submitted a written accommodation request due to her known disabilities, which included lifting restrictions as ordered by her orthopedic doctor. The accommodation request was specifically to not lift, pull, or push anything over fifteen (15) pounds during the course of the workday. NEWKIRK submitted the written request directly to the Administrator, Diana Gonzalez.

44.     Comments were subsequently made to NEWKIRK by Ms. Gonzalez that she would just be "sitting there" rather than working despite the reasonable nature of the accommodation request.

45.     On November 2, 2020, NEWKIRK overheard a meeting in which numerous Medical Assistants were informed by Ms. Gonzalez and Ms. Rault that another CONVIVA employee, Winsome Martin, a lab tech, had been exposed to a patient/friend that tested positive for COVID-19 following a blood draw. CONVIVA administration advised the medical assistants that Ms. Martin had gone to the home of the patient to draw blood and that CONVIVA considered this stealing because it was removing company property from the premises. Ms. NEWKIRK did not directly participate in this meeting but could hear the meeting in its entirety.

46.     Soon thereafter, in early November 2020, NEWKIRK received a telephone call from the Human Resources Department, directing her to engage in a confidential conversation regarding the investigation of another employee's conduct. During the phone call NEWKIRK was asked questions pertaining to an ongoing investigation by CONVIVA into Winsome Martin, a lab tech who was diagnosed with COVID-19 following completion of a blood draw outside of the office.

47.     Although the investigation pertained to a third party and the potential spread of COVID-19 in the workplace, CONVIVA began questioning NEWKIRK about her own actions with regard to drawing blood outside the facility.

48.     NEWKIRK provided truthful answers during the phone call, including responding that she had drawn blood from someone outside of the facility. NEWKIRK explained she had drawn her husband's blood at home a long time ago, while he was a patient at the facility and with the consent of his doctor and CONVIVA management.

49.     Without further follow-up, discussion, or investigation, CONVIVA subsequently terminated NEWKIRK's employment on November 23, 2020.

50.     By all accounts, NEWKIRK excelled at her position, having not received a single disciplinary warning during any of the thirty-four (34) years that she was employed by CONVIVA or it predecessors from July 1986 through November 23, 2020. Notwithstanding, on November 23, 2020, CONVIVA terminated NEWKIRK not as a result of her performance but due to improper discriminatory and illegal reasons.

51.     On November 23, 2020, CONVIVA terminated NEWKIRK's position under the pretext that NEWKIRK had taken an item from the office, allegedly related to a blood draw NEWKIRK had performed years prior and with the permission of the patient's doctor and management.

52.     On the same day as NEWKIRK's termination, two other medical assistants who are over the age of fifty, also suffer disabilities, and who had recently requested reasonable accommodations for their disabilities, namely Plaintiffs, BETANZOS and WALKER, were also terminated under the same pretext.

53.     CONVIVA's termination of NEWKIRK was not as a result of her performance but due to improper discriminatory and illegal reasons. Specifically, CONVIVA targeted and terminated NEWKIRK under pretext as a result of her age and disability.

**Beth Walker**

54.     WALKER was employed at CONVIVA on a continuous basis for more than twenty-five (25) years from October 9, 1995 through November 23, 2020.

55.     In 1995, WALKER was hired by CONVIVA, known at that time as Humana Medical Plan, Inc., as a Registered Medical Assistant.

56.     On April 7, 1998, WALKER was transferred to the Hypoluxo office where she served in this capacity as a Registered Medical Assistant up to and until her termination.

57.     WALKER dedicated a large portion of her life to CONVIVA (and its prior entities), and by all accounts, was always recognized as hardworking, committed, and dedicated to her job. WALKER always performed her duties and responsibilities in an exemplary manner and received positive performance reviews.

58.     On August 10, 2020, after returning from a two-week vacation, Administrator, Diana Gonzalez, notified WALKER that two of her colleagues (one of which was NEWKIRK) had expressed concern over WALKER's health issues, specifically her breathing with the use of the required Personal Protection Equipment ("PPE") during certain procedures. NEWKIRK had met with Ms. Gonzalez to speak up on WALKER's behalf of the unsafe work environment WALKER was being placed in giving her health issues.

59.     At that point, Administrator, Diana Gonzalez, decided to relocate WALKER to a position as the Receptionist/Medical Assistant to take effect beginning August 11, 2020.

60.     While WALKER was on her vacation, she also received an email from corporate, explaining that an investigation was being conducted and asking for WALKER to contact them. When WALKER reached out, she was advised that the investigation was closed. WALKER was later notified that the investigation had been regarding how the Administrator, Ms. Gonzalez, was mistreating and/or discriminating against employees.

61.     On August 11, 2020, WALKER began her position as the Receptionist/Medical Assistant; however, after only one week of working, Ms. Gonzalez advised WALKER that she had to leave the workplace and would not be permitted to return to work until she had a note from her doctor.

62.     WALKER subsequently provided a note from her cardiologist within three days. WALKER returned to work and confirmed with Ms. Gonzalez and Ms. Gonzalez's supervisor, Melanie Rault, that she was comfortable with her new position and did not have any issues or concerns. Ms. Rault informed WALKER that the company was accommodating her disability.

63.     On November 2, 2020, WALKER attended a meeting in which the Medical Assistants were informed by Ms. Gonzalez and Ms. Rault that another CONVIVA employee, Winsome Martin, a lab tech, had been exposed to a patient/friend that tested positive for COVID-19 following a blood draw. CONVIVA administration advised the medical assistants, including WALKER, that Ms. Martin had gone to the home of the patient to draw blood and that CONVIVA considered this stealing because it was removing company property from the premises.

64.     At no time prior to this meeting had WALKER ever been made aware of CONVIVA's policy or any concerns on this matter.

65.     On November 6, 2020, WALKER took a COVID-19 test, confirming she was negative and could continue to work despite potential exposure to the virus in the workplace.

66.     On or about November 17, 2020, WALKER received a telephone call from the Human Resources Department, directing her to engage in a confidential conversation regarding the investigation of Ms. Martin. During the phone call WALKER was asked questions pertaining to Ms. Martin and her knowledge of Ms. Martin and other employees completing blood draws outside of the facility.

67.     WALKER provided truthful answers during the phone call, including that she had drawn blood from someone outside of the facility. WALKER responded that she had drawn her son's blood at home well over five years ago, while he was a patient at the facility and with the permission of the patient's doctor and CONVIVA management.

68.     WALKER also provided information to Human Resources about blood draws taking place in the parking lot during the COVID-19 pandemic per doctor's orders and CONVIVA management, but confirmed that this practice only went on for a short period of time before patients were brought into the facility one by one for testing.

69.     The following day, November 18, 2020, WALKER was called again by Human Resources to continue the conversation, which now focused solely around the blood draw she had taken from her son years prior.

70.     WALKER confirmed, during this meeting with Human Resources, that the blood draw took place close to ten (10) years ago. Human Resources also questioned WALKER about her son's recent blood draw on June 26, 2019.

71.     WALKER stated that she did not perform the June 26, 2019 blood draw on her son. Diana Gonzalez, who was participating in this second phone call, confirmed that WALKER's son had an office appointment on June 26, 2019. Consistent to CONVIVA policy at the time, private pay patients were sent to LabCorp for such bloodwork.

72.     Just days later, on November 23, 2020, CONVIVA terminated WALKER's position under the pretext of removing company property from the premises, albeit close to ten (10) years ago when the facility was not yet under the CONVIVA company name and despite having had permission from the patient's doctor and management.

73.     By all accounts, WALKER excelled at her position during her twenty-five (25) years that she was employed by CONVIVA from October 1995 through November 23, 2020. Notwithstanding, on November 23, 2020, CONVIVA terminated WALKER not as a result of her performance but due to improper discriminatory and illegal reasons.

74.     On the same day as WALKER's termination, two other medical assistants who are over the age of fifty, also suffer disabilities, and who had recently requested reasonable accommodations for their disabilities, namely Plaintiffs, BETANZOS and NEWKIRK, were also terminated under the same pretext.

75.     CONVIVA's termination of WALKER was not as a result of her performance but due to improper discriminatory and illegal reasons. Specifically, CONVIVA targeted and terminated WALKER under pretext as a result of her age and disability.

**All Plaintiffs**

76.     During the investigation into third-party, Winsome Martin, all four of the five (5) medical assistants employed by CONVIVA at the Hypoluxo location were questioned by Human Resources; however, only the three (3) medical assistants over the age of fifty with known disabilities, BETANZOS, NEWKIRK, and WALKER, were subsequently questioned about their own conduct related to blood draws outside of the facility.

77.     The two medical assistants under the age of fifty with no known disabilities, were not subject to the same line of questioning, yet based on PLAINTIFFS' collective knowledge, PLAINTIFFS believe they would have answered in a similar manner as the PLAINTIFFS, confirming they had also engaged in blood draws outside of the facility with the approval of doctors and CONVIVA management.

78.     The two medical assistants under the age of fifty and with no known disabilities were not subject to the same lines of questioning during the investigation and were not asked if they had drawn blood outside the facility. These medical assistants remain employed with CONVIVA.

79.     Additionally, it is known that various doctors at CONVIVA have previously utilized company medical supplies outside of the facility on their family members, without consequence, discouragement, or reprimand.

80.     Further, since COVID-19 testing began, doctors at the facility administered testing to themselves, senior staff members, and these individual's family members outside of the office. The testing involved taking equipment home and performing tests outside of the office. Those individuals, outside of PLAINTIFFS' protected classes, did not face any consequences.

81.     CONVIVA utilized the investigation into an unrelated matter and into a third-party as a pretext to target and clean-house of employees over the age of fifty and with disabilities that required reasonable accommodations.

82.     CONVIVA, upon information and belief, has a recent history of terminating employees over the age of fifty while retaining and promoting younger employees with less experience.

83.     In addition to the PLAINTIFFS, CONVIVA has extended its pattern of terminating senior employees in favor of younger ones, including, without limitation, Dr. Leon Poveda, age sixty-five (65), Dr. Orlando Cuadra, over sixty (60) years of age, Dr. Alex Rosen, age fifty-eight (58), Dr. Dennis Salazar, age sixty eight (68), and Indra Deonarine, age fifty (50).

84.     PLAINTIFFS, due to the adverse employment actions they have faced due to discrimination because of their ages and disabilities, have been required to retain the legal services of the undersigned Counsel to enforce their rights and are required to pay their attorney a reasonable fee for services rendered in this case.

## COUNT I
## PLAINTIFF, ELSA BETANZOS', CLAIM OF AGE DISCRIMINATION IN VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT, 29 U.S.C. §§ 621-634

85.     Plaintiff, ELSA BETANZOS, adopts and incorporates by reference the allegations in Paragraphs 1 through 38 and 76 through 84 of this Complaint as if fully set forth herein.

86.     Under the ADEA, "it shall be unlawful for an employer – (1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age; [AND] (2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age."  29 U.S.C. § 623.

87.     CONVIVA is an "employer" as defined by the ADEA.

88.     BETANZOS was over the age of forty and qualified for her position with CONVIVA when her employment was terminated.

89.     BETANZOS had more than thirteen (13) years of experience as a Medical Assistant with CONVIVA, and more than four (4) years of experience as a Registered Medical Assistant with CONVIVA.

90.     Regardless, after more than a decade of service to CONVIVA, CONVIVA singled out BETANZOS and all of the medical assistants over the age of forty at the Hypoluxo location, and terminated her employment under pretext.

91.     Although BETANZOS was recognized for her hard work and commitment throughout the entirety of her employment, CONVIVA began to target BETANZOS in late 2020 due to her age.

16

92.     Specifically, CONVIVA singled out BETANZOS and the other medical assistants over the age of forty, subjecting them to questions about their own conduct over the duration of their employment with CONVIVA despite the subject of the investigation being a third-party, namely Winsome Martin, who performed a blood draw outside of the facility and subsequently contracted COVID-19.

93.     BETANZOS' fellow colleagues under the age of forty, consisting of two medical assistants, were not subject to the same lines of questioning during the investigation although it is believed they would have responded in a similar manner. The two younger medical assistants were not investigated, reprimanded, or terminated as a result of the investigation into Ms. Martin.

94.      CONVIVA used the investigation into a third-party to craft a pretext to effectuate BETANZOS' termination, along with her similarly aged colleagues, alleging that BETANZOS was in violation of company policy after taking company property out of the workplace although the alleged misgivings occurred more than a year prior with both doctor and management approval.

95.     CONVIVA's unlawful employment practices complained of above, deprived BETANZOS of her statutory rights under the ADEA.

96.     CONVIVA and its employees/agents discriminated against BETANZOS with respect to her employment because of her age by subjecting BETANZOS to an unwarranted investigation into a third-party and terminating her employment under pretext.

97.     BETANZOS suffered damages as a result of CONVIVA's unlawful discriminatory actions, including past and future lost wages and benefits and the costs of bringing this action.

98.     What is more, CONVIVA willfully violated BETANZOS' rights under the ADEA and, as a result, is liable for limited damages.

99.     BETANZOS has been required to retain the legal services of the undersigned Counsel to enforce her rights under the ADEA and is required to pay her attorney a reasonable fee for services rendered in this case.

WHEREFORE, Plaintiff, ELSA BETANZOS, demands judgment for damages, punitive damages, interest, costs, attorney's fees, and request injunctive relief, including, but not limited to, back pay, front pay, reinstatement of employment, employment benefits and enjoinment of CONVIVA from any further discrimination against BETANZOS, and for all other relief, legal and equitable, that the Court deems appropriate.

## COUNT II
## PLAINTIFF, ELSA BETANZOS', CLAIM OF AGE DISCRIMINATION IN VIOLATION OFTHE FLORIDA CIVIL RIGHTS ACT OF 1992

100.     Plaintiff, ELSA BETANZOS, adopts and incorporates by reference the allegations in Paragraphs 1 through 38 and 76 through 84 of this Complaint as if fully set forth herein.

101.     At al material times hereto, CONVIVA failed to comply with the FCRA, which states, in part, that it is an unlawful employment practice for an employer "[t]o discharge or to fail or refuse to hire any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, national origin, age, handicap, or marital status."

102.     CONVIVA is an "employer" as defined by § 760.09(7), Florida Statutes.

103.     At the time of her termination, BETANZOS was over the age of forty, qualified for her position with CONVIVA, and guaranteed specific civil rights under the Florida Civil Rights Act of 1992, Fla. Stat. 760.10 et seq.

104.     At all times necessary, BETANZOS was qualified to perform her duties as a Registered Medical Assistant.

105.    Specifically, BETANZOS had more than a decade of experience as a medical assistant with CONVIVA and was known for being a good employee with no write ups or disciplinary history.

106.    Regardless, after more than a decade of service to CONVIVA, CONVIVA singled out BETANZOS, and all of the other medical assistants over the age of forty at the Hypoluxo location, and terminated her employment under pretext.

107.    Although BETANZOS was recognized for her hard work and commitment throughout the entirety of her employment, CONVIVA began to target BETANZOS in late 2020 due to her age.

108.    Specifically, CONVIVA singled out BETANZOS and the other medical assistants over the age of forty, subjecting them to questions about their own conduct over the duration of their employment with CONVIVA despite the subject of the investigation being a third-party, namely Winsome Martin, who performed a blood draw outside of the facility and subsequently contracted COVID-19.

109.    BETANZOS' fellow colleagues under the age of forty, consisting of two medical assistants, were not subject to the same lines of questioning during the investigation although it is believed they would have responded in a similar manner. The two younger medical assistants were not investigated, reprimanded, or terminated as a result of the investigation into Ms. Martin.

110.    CONVIVA used the investigation into a third-party to craft a pretext to effectuate BETANZOS' termination, along with her similarly aged colleagues, alleging that BETANZOS was in violation of company policy after taking company property out of the workplace although the alleged misgivings occurred more than a year prior with both doctor and management approval.

111.    CONVIVA's unlawful employment practices complained of above, deprived BETANZOS of her statutory rights under the FCRA

112.    CONVIVA and its employees/agents discriminated against BETANZOS with respect to her employment because of her age by subjecting BETANZOS to an unwarranted investigation and terminating her employment under pretext.

113.    BETANZOS' termination constituted an adverse employment action against her which were causally related to the BETANZOS' age.

114.    Similarly situated male and female employees who were not of BETANZOS' age were treated more favorably by CONVIVA and were not subjected to an investigation nor terminated because of their age as referred to in the General Allegations of this Complaint.

115.    As a direct and proximate result of the foregoing, BETANZOS has suffered and continue to suffer embarrassment, humiliation, emotional distress, economic losses, and other forms of damage.

116.    Any alleged nondiscriminatory reason for this treatment of BETANZOS by CONVIVA is a mere pretext for the actual reason for discriminating against BETANZOS is based on her age.

117.    What is more, the aforementioned actions of CONVIVA were willful, wanton, intentional, and with malice or reckless indifference to BETANZOS' statutorily protected rights and the consequences of such actions, such that BETANZOS is entitled to punitive damages.

118.    BETANZOS has been required to retain the legal services of the undersigned Counsel to enforce her rights under the FCRA and are required to pay her attorney a reasonable fee for services rendered in this case.

WHEREFORE, Plaintiff, ELSA BETANZOS, demands judgment for damages, punitive damages, interest, costs, attorney's fees, and request injunctive relief, including, but not limited to, back pay, front pay, reinstatement of employment, employment benefits and enjoinment of CONVIVA from any further discrimination against BETANZOS, and for all other relief, legal and equitable, that the Court deems appropriate.

**COUNT III**
**PLAINTIFF, ELSA BETANZOS', CLAIM OF DISABILITY DISCRIMINATION IN VIOLATION OF TITLE I OF THE AMERICANS WITH DISABILITIES ACT**

119.    Plaintiff, ELSA BETANZOS, adopts and incorporates by reference the allegations in Paragraphs 1 through 38 and 76 through 84 of this Complaint as if fully set forth herein.

120.    Title I of the ADA, 42 U.S.C. § 12111, et seq., and its implementing regulation, 29 C.F.R. Part 1630, requires covered employers, such as CONVIVA, to provide reasonable accommodations to otherwise qualified employees with disabilities.

121.    Reasonable accommodations include, but are not limited to, ensuring compliance with medical work restrictions.

122.    CONVIVA is, and at all material times was, engaged in commerce and has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year and is an "employer" as defined by 42 U.S.C. § 12111(5).

123.    At the time of her termination from employment with CONVIVA, BETANZOS was a qualified individual with a disability as contemplated by 42 U.S.C. § 12111(8).

124.    BETANZOS is otherwise a qualified individual with a disability who was able to perform all of the functions of her position as Registered Medical Assistant, but required certain accommodations including the ability to leave work early on October 11, 2020 to seek medical attention for her disability.

125.     Specifically, CONVIVA was aware of Plaintiff, BETANZOS, need to seek medical treatment for her diverticulitis, but was reluctant to provide her with the time off to seek such treatment. Ultimately, BETANZOS was admitted to the hospital as a result and required to take a few days off from work.

126.     While CONVIVA allowed this accommodation after significant pushback, CONVIVA subsequently retaliated against the BETANZOS for this request and the need for such accommodation.

127.     CONVIVA retaliated against BETANZOS after she alerted management to her disabilities.

128.     CONVIVA took an adverse job action against BETANZOS, including, but not limited to, terminating her employment under pretext of alleged violations of work policy that were brought to light during an unrelated investigation into a third-party.

129.     Specifically, CONVIVA singled out BETANZOS and the other medical assistants with disabilities, subjecting them to questions about their own conduct over the duration of their employment with CONVIVA despite the subject of the investigation being a third-party, namely Winsome Martin, who performed a blood draw outside of the facility and subsequently contracted COVID-19.

130.     BETANZOS' fellow colleagues who did not have any known disabilities, consisting of two other medical assistants, were not subject to the same lines of questioning during the investigation although it is believed they would have responded in a similar manner. The two younger, nondisabled medical assistants were not investigated, reprimanded, or terminated as a result of the investigation into Ms. Martin.

131.    CONVIVA used the investigation into a third-party to craft a pretext to effectuate BETANZOS' termination, along with two other colleagues with disabilities, alleging that BETANZOS was in violation of company policy after taking company property out of the workplace although the alleged misgivings occurred more than a year prior with both doctor and management approval.

132.    CONVIVA's conduct as described in this Complaint constitutes discrimination on the basis of disability in violation of Title I of ADA, 42 U.S.C. § 12111, et seq., and its implementing regulation, 29 C.F.R. Part 1630.

133.    As a result of CONVIVA's actions, BETANZOS has suffered mental anguish, loss of earnings, loss of ability to earn money and other monetary damages. The losses and expenses are permanent and continuing and BETANZOS will suffer losses in the future.

134.    CONVIVA's actions caused, and continue to cause, irreparable harm through BETANZOS' loss of gainful employment and through loss of valuable employment benefits including group health insurance, life insurance, disability insurance, all of which she would have received had she not been unlawfully terminated.

WHEREFORE, Plaintiff, ELSA BETANZOS, demands judgment for damages, punitive damages, interest, costs, attorney's fees, and request injunctive relief, including, but not limited to, back pay, front pay, reinstatement of employment, employment benefits and enjoinment of CONVIVA from any further discrimination against BETANZOS, and for all other relief, legal and equitable, that the Court deems appropriate.

**COUNT IV**
**PLAINTIFF, ELSA BETANZOS', CLAIM OF DISABILITY DISCRIMINATION IN VIOLATION OF FLORIDA CIVIL RIGHTS ACT**

135.     Plaintiff, ELSA BETANZOS, adopts and incorporates by reference the allegations in Paragraphs 1 through 38 and 76 through 84 of this Complaint as if fully set forth herein.

136.     At all material times hereto, CONVIVA failed to comply with the FCRA, which states, in part, that it is an unlawful employment practice for an employer "[t]o discharge or to fail or refuse to hire any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, national origin, age, handicap, or marital status."

137.     CONVIVA is an "employer" as defined by § 760.02(7) of the Florida Statutes.

138.     At the time of her termination with CONVIVA, BETANZOS was a qualified individual with a disability.

139.     BETANZOS was otherwise a qualified individual with a disability who was able to perform all functions of her position as Registered Medical Assistant, but required certain accommodations including the ability to leave work early on October 11, 2020 to seek medical attention for her disability.

140.     Specifically, CONVIVA was aware of Plaintiff, BETANZOS, need to seek medical treatment for her diverticulitis, but was reluctant to provide her with the time off to seek such treatment. Ultimately, BETANZOS was admitted to the hospital as a result and required to take a few days off from work.

141.     While CONVIVA allowed this accommodation after significant pushback, CONVIVA subsequently retaliated against BETANZOS for her request and the need for such accommodation.

142.     CONVIVA retaliated against BETANZOS after she alerted management to her disabilities.

24

143.    During the course of BETANZOS' employment with CONVIVA, BETANZOS was subjected to a discriminatory work environment because of her disabilities.

144.    CONVIVA took an adverse job action against BETANZOS, including, but not limited to, terminating her employment under pretext of alleged violations of work policy that were brought to light during an unrelated investigation into a third-party.

145.    BETANZOS' fellow colleagues who did not have any known disabilities, consisting of two other medical assistants, were not subject to the same lines of questioning during the investigation although it is believed they would have responded in a similar manner. The two younger, nondisabled medical assistants were not investigated, reprimanded, or terminated as a result of the investigation into Ms. Martin.

146.    CONVIVA used the investigation into a third-party to craft a pretext to effectuate BETANZOS' termination, along with two other colleagues with disabilities, alleging that BETANZOS was in violation of company policy after taking company property out of the workplace although the alleged misgivings occurred more than a year prior with both doctor and management approval.

147.    CONVIVA's conduct as described in this Complaint constitutes discrimination on the basis of disability in violation of the Florida Civil Rights Act.

148.    Any alleged nondiscriminatory reason for this treatment of BETANZOS by CONVIVA is mere pretext for the actual reason for discriminating against BETANZOS based on her disabilities and request for reasonable accommodation.

149.    CONVIVA's actions were malicious and were recklessly indifferent to BETANZOS' rights pursuant to Fla. Stat. § 760.10.

150.     The aforementioned actions of CONVIVA were done wantonly, willfully, maliciously, and with reckless disregard of the consequences of such actions.

151.     As a direct and proximate result of the foregoing, BETANZOS has suffered and continues to suffer mental anguish, loss of earnings, loss of ability to earn money and other monetary damages. The losses and expenses are permanent and continuing and BETANZOS will suffer losses in the future.

152.     CONVIVA's actions caused, and continue to cause, irreparable harm through BETANZOS' loss of gainful employment and through the loss of valuable employment benefits including group health insurance, life insurance, disability insurance, all of which she would have received had she not been unlawfully terminated.

WHEREFORE, Plaintiff, ELSA BETANZOS, demands judgment for damages, punitive damages, interest, costs, attorney's fees, and request injunctive relief, including, but not limited to, back pay, front pay, reinstatement of employment, employment benefits and enjoinment of CONVIVA from any further discrimination against BETANZOS, and for all other relief, legal and equitable, that the Court deems appropriate.

## COUNT V
## PLAINTIFF, KIMBERLY NEWKIRK'S, CLAIM OF AGE DISCRIMINATION IN VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT, 29 U.S.C. §§ 621-634

153.     Plaintiff, KIMBERLY NEWKIRK, adopts and incorporates by reference the allegations in Paragraphs 1 through 24, 39 through 53, and 76 through 84 of this Complaint as if fully set forth herein.

154.     Under the ADEA, "it shall be unlawful for an employer – (1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's

age; [AND] (2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age." 29 U.S.C. § 623.

155.    CONVIVA is an "employer" as defined by the ADEA.

156.    NEWKIRK was over the age of forty and qualified for her position with CONVIVA when her employment was terminated.

157.    NEWKIRK had more than thirty-four (34) years of experience as a Registered Medical Assistant with CONVIVA.

158.    Regardless, after more than a decade of service to CONVIVA, CONVIVA singled out NEWKIRK and all of the medical assistants over the age of forty at the Hypoluxo location, and terminated her employment under pretext.

159.    Although NEWKIRK was recognized for her hard work and commitment throughout the entirety of her employment, CONVIVA began to target NEWKIRK in late 2020 due to her age.

160.    Specifically, CONVIVA singled out NEWKIRK and the other medical assistants over the age of forty, subjecting them to questions about their own conduct over the duration of their employment with CONVIVA despite the subject of the investigation being a third-party, namely Winsome Martin, who performed a blood draw outside of the facility and subsequently contracted COVID-19.

161.    NEWKIRK's fellow colleagues under the age of forty, consisting of two medical assistants, were not subject to the same lines of questioning during the investigation although it is believed they would have responded in a similar manner. The two younger medical assistants were not investigated, reprimanded, or terminated as a result of the investigation into Ms. Martin.

27

162.     CONVIVA used the investigation into a third-party to craft a pretext to effectuate NEWKIRK's termination, along with her similarly aged colleagues, alleging that NEWKIRK was in violation of company policy after taking company property out of the workplace although the alleged misgivings occurred more than a year prior with both doctor and management approval.

163.     CONVIVA's unlawful employment practices complained of above, deprived NEWKIRK of her statutory rights under the ADEA.

164.     CONVIVA and its employees/agents discriminated against NEWKIRK with respect to her employment because of her age by subjecting NEWKIRK to an unwarranted investigation into a third-party and terminating her employment under pretext.

165.     NEWKIRK suffered damages as a result of CONVIVA's unlawful discriminatory actions, including past and future lost wages and benefits and the costs of bringing this action.

166.     What is more, CONVIVA willfully violated NEWKIRK's rights under the ADEA and, as a result, is liable for limited damages.

167.     NEWKIRK has been required to retain the legal services of the undersigned Counsel to enforce her rights under the ADEA and is required to pay her attorney a reasonable fee for services rendered in this case.

WHEREFORE, Plaintiff, KIMBERLY NEWKIRK, demands judgment for damages, punitive damages, interest, costs, attorney's fees, and request injunctive relief, including, but not limited to, back pay, front pay, reinstatement of employment, employment benefits and enjoinment of CONVIVA from any further discrimination against NEWKIRK, and for all other relief, legal and equitable, that the Court deems appropriate.

## COUNT VI
## PLAINTIFF, KIMBERLY NEWKIRK'S, CLAIM OF AGE DISCRIMINATION IN VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT OF 1992

168.    Plaintiff, KIMBERLY NEWKIRK, adopts and incorporates by reference the allegations in Paragraphs 1 through 24, 39 through 53, and 76 through 84 of this Complaint as if fully set forth herein.

169.    At al material times hereto, CONVIVA failed to comply with the FCRA, which states, in part, that it is an unlawful employment practice for an employer "[t]o discharge or to fail or refuse to hire any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, national origin, age, handicap, or marital status."

170.    CONVIVA is an "employer" as defined by § 760.09(7), Florida Statutes.

171.    At the time of her termination, NEWKIRK was over the age of forty, qualified for her position with CONVIVA, and guaranteed specific civil rights under the Florida Civil Rights Act of 1992, Fla. Stat. 760.10 et seq.

172.    At all times necessary, NEWKIRK was qualified to perform her duties as a Registered Medical Assistant.

173.    Specifically, NEWKIRK had more than three decades of experience as a medical assistant with CONVIVA and was known for being a good employee with no write ups or disciplinary history for the duration of her employment.

174.    Regardless, after more than three decades of service to CONVIVA, CONVIVA singled out NEWKIRK, and all of the other medical assistants over the age of forty at the Hypoluxo location, and terminated her employment under pretext.

175.    Although NEWKIRK was recognized for her hard work and commitment throughout the entirety of her employment, CONVIVA began to target NEWKIRK in late 2020 due to her age.

176.    Specifically, CONVIVA singled out NEWKIRK and the other medical assistants over the age of forty, subjecting them to questions about their own conduct over the duration of their employment with CONVIVA despite the subject of the investigation being a third-party, namely Winsome Martin, who performed a blood draw outside of the facility and subsequently contracted COVID-19.

177.    NEWKIRK's fellow colleagues under the age of forty, consisting of two medical assistants, were not subject to the same lines of questioning during the investigation although it is believed they would have responded in a similar manner. The two younger medical assistants were not investigated, reprimanded, or terminated as a result of the investigation into Ms. Martin.

178.    CONVIVA used the investigation into a third-party to craft a pretext to effectuate NEWKIRK's termination, along with her similarly aged colleagues, alleging that NEWKIRK was in violation of company policy after taking company property out of the workplace although the alleged misgivings occurred more than a year prior with both doctor and management approval.

179.    CONVIVA's unlawful employment practices complained of above, deprived NEWKIRK of her statutory rights under the FCRA

180.    CONVIVA and its employees/agents discriminated against NEWKIRK with respect to her employment because of her age by subjecting NEWKIRK to an unwarranted investigation and terminating her employment under pretext.

181.    NEWKIRK's termination constituted an adverse employment action against her which were causally related to the NEWKIRK's age.

182.    Similarly situated male and female employees who were not of NEWKIRK's age were treated more favorably by CONVIVA and were not subjected to an investigation nor terminated because of their age as referred to in the General Allegations of this Complaint.

183.    As a direct and proximate result of the foregoing, NEWKIRK has suffered and continue to suffer embarrassment, humiliation, emotional distress, economic losses, and other forms of damage.

184.    Any alleged nondiscriminatory reason for this treatment of NEWKIRK by CONVIVA is a mere pretext for the actual reason for discriminating against NEWKIRK is based on her age.

185.    What is more, the aforementioned actions of CONVIVA were willful, wanton, intentional, and with malice or reckless indifference to NEWKIRK's statutorily protected rights and the consequences of such actions, such that NEWKIRK is entitled to punitive damages.

186.    NEWKIRK has been required to retain the legal services of the undersigned Counsel to enforce her rights under the FCRA and are required to pay her attorney a reasonable fee for services rendered in this case.

WHEREFORE, Plaintiff, KIMBERLY NEWKIRK, demands judgment for damages, punitive damages, interest, costs, attorney's fees, and request injunctive relief, including, but not limited to, back pay, front pay, reinstatement of employment, employment benefits and enjoinment of CONVIVA from any further discrimination against NEWKIRK, and for all other relief, legal and equitable, that the Court deems appropriate.

<u>COUNT VII</u>
<u>PLAINTIFF, KIMBERLY NEWKIRK'S, CLAIM OF DISABILITY DISCRIMINATION
IN VIOLATION OF TITLE I OF THE AMERICANS WITH DISABILITIES ACT</u>

187.    Plaintiff, KIMBERLY NEWKIRK, adopts and incorporates by reference the allegations in Paragraphs 1 through 24, 39 through 53, and 76 through 84 of this Complaint as if fully set forth herein.

188.    Title I of the ADA, 42 U.S.C. § 12111, et seq., and its implementing regulation, 29 C.F.R. Part 1630, requires covered employers, such as CONVIVA, to provide reasonable accommodations to otherwise qualified employees with disabilities.

189.    Reasonable accommodations include, but are not limited to, ensuring compliance with medical work restrictions.

190.    CONVIVA is, and at all material times was, engaged in commerce and has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year and is an "employer" as defined by 42 U.S.C. § 12111(5).

191.    At the time of her termination from employment with CONVIVA, NEWKIRK was a qualified individual with a disability as contemplated by 42 U.S.C. § 12111(8).

192.    NEWKIRK is otherwise a qualified individual with a disability who was able to perform all of the functions of her position as Registered Medical Assistant, but required certain accommodations, specifically the reasonable accommodation of not lifting, pulling, or pushing anything over fifteen (15) pounds.

193.    CONVIVA was aware of Plaintiff, NEWKIRK's accommodation, which was supported by a written request for said reasonable accommodation.

194.    While CONVIVA allowed this accommodation after significant pushback, CONVIVA subsequently retaliated against the NEWKIRK for the request and the need for such accommodation.

195.    CONVIVA retaliated against NEWKIRK after she alerted management to her disabilities and provided medical documentation supporting her needs for various accommodation.

196.    CONVIVA took an adverse job action against NEWKIRK, including, but not limited to, terminating her employment under pretext of alleged violations of work policy that were brought to light during an unrelated investigation into a third-party.

197.    Specifically, CONVIVA singled out NEWKIRK and the other medical assistants with disabilities, subjecting them to questions about their own conduct over the duration of their employment with CONVIVA despite the subject of the investigation being a third-party, namely Winsome Martin, who performed a blood draw outside of the facility and subsequently contracted COVID-19.

198.    NEWKIRK's fellow colleagues who did not have any known disabilities, consisting of two other medical assistants, were not subject to the same lines of questioning during the investigation although it is believed they would have responded in a similar manner. The two younger, nondisabled medical assistants were not investigated, reprimanded, or terminated as a result of the investigation into Ms. Martin.

199.    CONVIVA used the investigation into a third-party to craft a pretext to effectuate NEWKIRK's termination, along with two other colleagues with disabilities, alleging that NEWKIRK was in violation of company policy after taking company property out of the workplace although the alleged misgivings occurred more than a year prior with both doctor and management approval.

200.     CONVIVA's conduct as described in this Complaint constitutes discrimination on the basis of disability in violation of Title I of ADA, 42 U.S.C. § 12111, et seq., and its implementing regulation, 29 C.F.R. Part 1630.

201.     As a result of CONVIVA's actions, NEWKIRK has suffered mental anguish, loss of earnings, loss of ability to earn money and other monetary damages. The losses and expenses are permanent and continuing and NEWKIRK will suffer losses in the future.

202.     CONVIVA's actions caused, and continue to cause, irreparable harm through NEWKIRK's loss of gainful employment and through loss of valuable employment benefits including group health insurance, life insurance, disability insurance, all of which she would have received had she not been unlawfully terminated.

WHEREFORE, Plaintiff, KIMBERLY NEWKIRK, demands judgment for damages, punitive damages, interest, costs, attorney's fees, and request injunctive relief, including, but not limited to, back pay, front pay, reinstatement of employment, employment benefits and enjoinment of CONVIVA from any further discrimination against NEWKIRK, and for all other relief, legal and equitable, that the Court deems appropriate.

### COUNT VIII
### PLAINTIFF, KIMBERLY NEWKIRK'S, CLAIM OF DISABILITY DISCRIMINATION IN VIOLATION OF FLORIDA CIVIL RIGHTS ACT

203.     Plaintiff, KIMBERLY NEWKIRK, adopts and incorporates by reference the allegations in Paragraphs 1 through 24, 39 through 53, and 76 through 84 of this Complaint as if fully set forth herein.

204.     At all material times hereto, CONVIVA failed to comply with the FCRA, which states, in part, that it is an unlawful employment practice for an employer "[t]o discharge or to fail or refuse to hire any individual, or otherwise to discriminate against any individual with respect to

compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, national origin, age, handicap, or marital status."

205.    CONVIVA is an "employer" as defined by § 760.02(7) of the Florida Statutes.

206.    At the time of her termination with CONVIVA, NEWKIRK was a qualified individual with a disability.

207.    NEWKIRK was otherwise a qualified individual with a disability who was able to perform all functions of her position as Registered Medical Assistant, but required certain accommodations, specifically the reasonable accommodation of not lifting, pulling, or pushing anything over fifteen (15) pounds.

208.    CONVIVA was aware of Plaintiff, NEWKIRK's accommodation, which was supported by a written request for said reasonable accommodation.

209.    While CONVIVA allowed this accommodation after significant pushback, CONVIVA subsequently retaliated against NEWKIRK for her request and the need for such accommodation.

210.    CONVIVA retaliated against NEWKIRK after she alerted management to her disabilities and provided medical documentation supporting their needs for various accommodation.

211.    During the course of NEWKIRK's employment with CONVIVA, NEWKIRK was subjected to a discriminatory work environment because of her disabilities.

212.    CONVIVA took an adverse job action against NEWKIRK, including, but not limited to, terminating her employment under pretext of alleged violations of work policy that were brought to light during an unrelated investigation into a third-party.

213.   NEWKIRK's fellow colleagues who did not have any known disabilities, consisting of two other medical assistants, were not subject to the same lines of questioning during the investigation although it is believed they would have responded in a similar manner. The two younger, nondisabled medical assistants were not investigated, reprimanded, or terminated as a result of the investigation into Ms. Martin.

214.   CONVIVA used the investigation into a third-party to craft a pretext to effectuate NEWKIRK's termination, along with two other colleagues with disabilities, alleging that NEWKIRK was in violation of company policy after taking company property out of the workplace although the alleged misgivings occurred more than a year prior with both doctor and management approval.

215.   CONVIVA's conduct as described in this Complaint constitutes discrimination on the basis of disability in violation of the Florida Civil Rights Act.

216.   Any alleged nondiscriminatory reason for this treatment of NEWKIRK by CONVIVA is mere pretext for the actual reason for discriminating against NEWKIRK based on her disabilities and request for reasonable accommodation.

217.   CONVIVA's actions were malicious and were recklessly indifferent to NEWKIRK's rights pursuant to Fla. Stat. § 760.10.

218.   The aforementioned actions of CONVIVA were done wantonly, willfully, maliciously, and with reckless disregard of the consequences of such actions.

219.   As a direct and proximate result of the foregoing, NEWKIRK has suffered and continues to suffer mental anguish, loss of earnings, loss of ability to earn money and other monetary damages. The losses and expenses are permanent and continuing and NEWKIRK will suffer losses in the future.

220.    CONVIVA's actions caused, and continue to cause, irreparable harm through NEWKIRK's loss of gainful employment and through the loss of valuable employment benefits including group health insurance, life insurance, disability insurance, all of which she would have received had she not been unlawfully terminated.

WHEREFORE, Plaintiff, KIMBERLY NEWKIRK, demands judgment for damages, punitive damages, interest, costs, attorney's fees, and request injunctive relief, including, but not limited to, back pay, front pay, reinstatement of employment, employment benefits and enjoinment of CONVIVA from any further discrimination against NEWKIRK, and for all other relief, legal and equitable, that the Court deems appropriate.

**COUNT IX**
**PLAINTIFF, BETH WALKER'S, CLAIM OF AGE DISCRIMINATION IN VIOLATION**
**OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT,**
**29 U.S.C. §§ 621-634**

221.    Plaintiff, BETH WALKER, adopts and incorporates by reference the allegations in Paragraphs 1 through 24, and 54 through 84 of this Complaint as if fully set forth herein.

222.    Under the ADEA, "it shall be unlawful for an employer – (1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age; [AND] (2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age."  29 U.S.C. § 623.

223.    CONVIVA is an "employer" as defined by the ADEA.

224.    WALKER was over the age of forty and qualified for her position with CONVIVA when her employment was terminated.

225.    WALKER had more than twenty-five (25) years of experience as a Registered Medical Assistant with CONVIVA.

226.    Regardless, after more than two decades of service to CONVIVA, CONVIVA singled out WALKER and all of the medical assistants over the age of forty at the Hypoluxo location, and terminated her employment under pretext.

227.    Although WALKER was recognized for her hard work and commitment throughout the entirety of her employment, CONVIVA began to target WALKER in late 2020 due to her age.

228.    Specifically, CONVIVA singled out WALKER and the other medical assistants over the age of forty, subjecting them to questions about their own conduct over the duration of their employment with CONVIVA despite the subject of the investigation being a third-party, namely Winsome Martin, who performed a blood draw outside of the facility and subsequently contracted COVID-19.

229.    WALKER's fellow colleagues under the age of forty, consisting of two medical assistants, were not subject to the same lines of questioning during the investigation although it is believed they would have responded in a similar manner. The two younger medical assistants were not investigated, reprimanded, or terminated as a result of the investigation into Ms. Martin.

230.    CONVIVA used the investigation into a third-party to craft a pretext to effectuate WALKER's termination, along with her similarly aged colleagues, alleging that WALKER was in violation of company policy after taking company property out of the workplace although the alleged misgivings occurred more than a year prior with both doctor and management approval.

231.    CONVIVA's unlawful employment practices complained of above, deprived WALKER of her statutory rights under the ADEA.

232.     CONVIVA and its employees/agents discriminated against WALKER with respect to her employment because of her age by subjecting WALKER to an unwarranted investigation into a third-party and terminating her employment under pretext.

233.     WALKER suffered damages as a result of CONVIVA's unlawful discriminatory actions, including past and future lost wages and benefits and the costs of bringing this action.

234.     What is more, CONVIVA willfully violated WALKER's rights under the ADEA and, as a result, is liable for limited damages.

235.     WALKER has been required to retain the legal services of the undersigned Counsel to enforce her rights under the ADEA and is required to pay her attorney a reasonable fee for services rendered in this case.

WHEREFORE, Plaintiff, BETH WALKER, demands judgment for damages, punitive damages, interest, costs, attorney's fees, and request injunctive relief, including, but not limited to, back pay, front pay, reinstatement of employment, employment benefits and enjoinment of CONVIVA from any further discrimination against WALKER, and for all other relief, legal and equitable, that the Court deems appropriate.

## COUNT X
## PLAINTIFF, BETH WALKER'S, CLAIM OF AGE DISCRIMINATION IN VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT OF 1992

236.     Plaintiff, BETH WALKER, adopts and incorporates by reference the allegations in Paragraphs 1 through 24 and 54 through 84 of this Complaint as if fully set forth herein.

237.     At al material times hereto, CONVIVA failed to comply with the FCRA, which states, in part, that it is an unlawful employment practice for an employer "[t]o discharge or to fail or refuse to hire any individual, or otherwise to discriminate against any individual with respect to

compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, national origin, age, handicap, or marital status."

238.    CONVIVA is an "employer" as defined by § 760.09(7), Florida Statutes.

239.    At the time of her termination, WALKER was over the age of forty, qualified for her position with CONVIVA, and guaranteed specific civil rights under the Florida Civil Rights Act of 1992, Fla. Stat. 760.10 et seq.

240.    At all times necessary, WALKER was qualified to perform her duties as a Registered Medical Assistant.

241.    Specifically, WALKER had more than two decades of experience as a medical assistant with CONVIVA and was known for being a good employee with no write ups or disciplinary history for the duration of her employment.

242.    Regardless, after more than three decades of service to CONVIVA, CONVIVA singled out WALKER, and all of the other medical assistants over the age of forty at the Hypoluxo location, and terminated her employment under pretext.

243.    Although WALKER was recognized for her hard work and commitment throughout the entirety of her employment, CONVIVA began to target WALKER in late 2020 due to her age.

244.    Specifically, CONVIVA singled out WALKER and the other medical assistants over the age of forty, subjecting them to questions about their own conduct over the duration of their employment with CONVIVA despite the subject of the investigation being a third-party, namely Winsome Martin, who performed a blood draw outside of the facility and subsequently contracted COVID-19.

245.    WALKER's fellow colleagues under the age of forty, consisting of two medical assistants, were not subject to the same lines of questioning during the investigation although it is believed they would have responded in a similar manner. The two younger medical assistants were not investigated, reprimanded, or terminated as a result of the investigation into Ms. Martin.

246.    CONVIVA used the investigation into a third-party to craft a pretext to effectuate WALKER's termination, along with her similarly aged colleagues, alleging that WALKER was in violation of company policy after taking company property out of the workplace although the alleged misgivings occurred more than a year prior with both doctor and management approval.

247.    CONVIVA's unlawful employment practices complained of above, deprived WALKER of her statutory rights under the FCRA

248.    CONVIVA and its employees/agents discriminated against WALKER with respect to her employment because of her age by subjecting WALKER to an unwarranted investigation and terminating her employment under pretext.

249.    WALKER's termination constituted an adverse employment action against her which were causally related to the WALKER's age.

250.    Similarly situated male and female employees who were not of WALKER's age were treated more favorably by CONVIVA and were not subjected to an investigation nor terminated because of their age as referred to in the General Allegations of this Complaint.

251.    As a direct and proximate result of the foregoing, WALKER has suffered and continue to suffer embarrassment, humiliation, emotional distress, economic losses, and other forms of damage.

252.     Any alleged nondiscriminatory reason for this treatment of WALKER by CONVIVA is a mere pretext for the actual reason for discriminating against WALKER is based on her age.

253.     What is more, the aforementioned actions of CONVIVA were willful, wanton, intentional, and with malice or reckless indifference to WALKER's statutorily protected rights and the consequences of such actions, such that WALKER is entitled to punitive damages.

254.     WALKER has been required to retain the legal services of the undersigned Counsel to enforce her rights under the FCRA and are required to pay her attorney a reasonable fee for services rendered in this case.

WHEREFORE, Plaintiff, BETH WALKER, demands judgment for damages, punitive damages, interest, costs, attorney's fees, and request injunctive relief, including, but not limited to, back pay, front pay, reinstatement of employment, employment benefits and enjoinment of CONVIVA from any further discrimination against WALKER, and for all other relief, legal and equitable, that the Court deems appropriate.

### COUNT XI
### PLAINTIFF, BETH WALKER'S, CLAIM OF DISABILITY DISCRIMINATION IN VIOLATION OF TITLE I OF THE AMERICANS WITH DISABILITIES ACT

255.     Plaintiff, BETH WALKER, adopts and incorporates by reference the allegations in Paragraphs 1 through 24 and 54 through 84 of this Complaint as if fully set forth herein.

256.     Title I of the ADA, 42 U.S.C. § 12111, et seq., and its implementing regulation, 29 C.F.R. Part 1630, requires covered employers, such as CONVIVA, to provide reasonable accommodations to otherwise qualified employees with disabilities.

257.     Reasonable accommodations include, but are not limited to, ensuring compliance with medical work restrictions.

258.    CONVIVA is, and at all material times was, engaged in commerce and has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year and is an "employer" as defined by 42 U.S.C. § 12111(5).

259.    At the time of her termination from employment with CONVIVA, WALKER was a qualified individual with a disability as contemplated by 42 U.S.C. § 12111(8).

260.    WALKER is otherwise a qualified individual with a disability who was able to perform all of the functions of her position as Registered Medical Assistant, but required certain accommodations, specifically reduced exposure to activities requiring the use of full PPE due to breathing difficulties related to her disabilities.

261.    CONVIVA was aware of WALKER's accommodation, which was supported by her cardiologist's written recommendations.

262.    While CONVIVA allowed this accommodation after significant pushback, CONVIVA subsequently retaliated against the WALKER for the request and the need for such accommodation.

263.    CONVIVA retaliated against WALKER after she alerted management to her disabilities and provided medical documentation supporting her needs for various accommodation.

264.    CONVIVA took an adverse job action against WALKER, including, but not limited to, terminating her employment under pretext of alleged violations of work policy that were brought to light during an unrelated investigation into a third-party.

265.    Specifically, CONVIVA singled out WALKER and the other medical assistants with disabilities, subjecting them to questions about their own conduct over the duration of their employment with CONVIVA despite the subject of the investigation being a third-party, namely

Winsome Martin, who performed a blood draw outside of the facility and subsequently contracted COVID-19.

266.    WALKER's fellow colleagues who did not have any known disabilities, consisting of two other medical assistants, were not subject to the same lines of questioning during the investigation although it is believed they would have responded in a similar manner. The two younger, nondisabled medical assistants were not investigated, reprimanded, or terminated as a result of the investigation into Ms. Martin.

267.    CONVIVA used the investigation into a third-party to craft a pretext to effectuate WALKER's termination, along with two other colleagues with disabilities, alleging that WALKER was in violation of company policy after taking company property out of the workplace although the alleged misgivings occurred ten (10) years prior with both doctor and management approval.

268.    CONVIVA's conduct as described in this Complaint constitutes discrimination on the basis of disability in violation of Title I of ADA, 42 U.S.C. § 12111, et seq., and its implementing regulation, 29 C.F.R. Part 1630.

269.    As a result of CONVIVA's actions, WALKER has suffered mental anguish, loss of earnings, loss of ability to earn money and other monetary damages. The losses and expenses are permanent and continuing and WALKER will suffer losses in the future.

270.    CONVIVA's actions caused, and continue to cause, irreparable harm through WALKER's loss of gainful employment and through loss of valuable employment benefits including group health insurance, life insurance, disability insurance, all of which she would have received had she not been unlawfully terminated.

WHEREFORE, Plaintiff, BETH WALKER, demands judgment for damages, punitive damages, interest, costs, attorney's fees, and request injunctive relief, including, but not limited to, back pay, front pay, reinstatement of employment, employment benefits and enjoinment of CONVIVA from any further discrimination against WALKER, and for all other relief, legal and equitable, that the Court deems appropriate.

**COUNT XII**
**PLAINTIFF, BETH WALKER'S, CLAIM OF DISABILITY DISCRIMINATION IN**
**VIOLATION OF FLORIDA CIVIL RIGHTS ACT**

271.     Plaintiff, BETH WALKER, adopts and incorporates by reference the allegations in Paragraphs 1 through 24 and 54 through 84 of this Complaint as if fully set forth herein.

272.     At all material times hereto, CONVIVA failed to comply with the FCRA, which states, in part, that it is an unlawful employment practice for an employer "[t]o discharge or to fail or refuse to hire any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, national origin, age, handicap, or marital status."

273.     CONVIVA is an "employer" as defined by § 760.02(7) of the Florida Statutes.

274.     At the time of her termination with CONVIVA, WALKER was a qualified individual with a disability.

275.     WALKER was otherwise a qualified individual with a disability who was able to perform all functions of her position as Registered Medical Assistant, but required certain accommodations, specifically reduced exposure to activities requiring the use of full PPE due to breathing difficulties related to her disabilities.

276.     CONVIVA was aware of WALKER's accommodation, which was supported by her cardiologist's written recommendations.

277.     While CONVIVA allowed this accommodation after significant pushback, CONVIVA subsequently retaliated against WALKER for her request and the need for such accommodation.

278.     CONVIVA retaliated against WALKER after she alerted management to her disabilities and provided medical documentation supporting their needs for various accommodation.

279.     During the course of WALKER's employment with CONVIVA, WALKER was subjected to a discriminatory work environment because of her disabilities.

280.     CONVIVA took an adverse job action against WALKER, including, but not limited to, terminating her employment under pretext of alleged violations of work policy that were brought to light during an unrelated investigation into a third-party.

281.     WALKER's fellow colleagues who did not have any known disabilities, consisting of two other medical assistants, were not subject to the same lines of questioning during the investigation although it is believed they would have responded in a similar manner. The two younger, nondisabled medical assistants were not investigated, reprimanded, or terminated as a result of the investigation into Ms. Martin.

282.     CONVIVA used the investigation into a third-party to craft a pretext to effectuate WALKER's termination, along with two other colleagues with disabilities, alleging that WALKER was in violation of company policy after taking company property out of the workplace although the alleged misgivings occurred more than a year prior with both doctor and management approval.

283.     CONVIVA's conduct as described in this Complaint constitutes discrimination on the basis of disability in violation of the Florida Civil Rights Act.

284.    Any alleged nondiscriminatory reason for this treatment of WALKER by CONVIVA is mere pretext for the actual reason for discriminating against WALKER based on her disabilities and request for reasonable accommodation.

285.    CONVIVA's actions were malicious and were recklessly indifferent to WALKER's rights pursuant to Fla. Stat. § 760.10.

286.    The aforementioned actions of CONVIVA were done wantonly, willfully, maliciously, and with reckless disregard of the consequences of such actions.

287.    As a direct and proximate result of the foregoing, WALKER has suffered and continues to suffer mental anguish, loss of earnings, loss of ability to earn money and other monetary damages. The losses and expenses are permanent and continuing and WALKER will suffer losses in the future.

288.    CONVIVA's actions caused, and continue to cause, irreparable harm through WALKER's loss of gainful employment and through the loss of valuable employment benefits including group health insurance, life insurance, disability insurance, all of which she would have received had she not been unlawfully terminated.

WHEREFORE, Plaintiff, BETH WALKER, demands judgment for damages, punitive damages, interest, costs, attorney's fees, and request injunctive relief, including, but not limited to, back pay, front pay, reinstatement of employment, employment benefits and enjoinment of CONVIVA from any further discrimination against WALKER, and for all other relief, legal and equitable, that the Court deems appropriate.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, ELSA BETANZOS, KIMBERLY NEWKIRK, and BETH WALKER, demand judgment against Defendant, CONVIVA PHYSICIAN GROUP, LLC, a Florida Limited Liability Company, and requests the following relief:

1. Enter judgment in favor of PLAINTIFFS for CONVIVA's violation of the ADEA, the ADA, and the FCRA.

2. Award PLAINTIFFS actual damages suffered;

3. Award back pay and value of lost employment benefits to PLAINTIFFS;

4. Award front pay to PLAINTIFFS for the years they would have worked absent CONVIVA's discriminatory treatment;

5. Enter judgment in favor of PLAINTIFFS for compensatory damages for the embarrassment, anxiety, humiliation, and emotional distress PLAINTIFFS have suffered and continue to suffer;

6. Award PLAINTIFFS punitive damages;

7. Award to PLAINTIFFS all costs and reasonable attorney's fees incurred in connection with this action;

8. Award prejudgment interest on all monetary recovery obtained;

9. An injunction permanently enjoining CONVIVA PYSICIAN GROUP, LLC, a Florida Limited Liability Company, its officers, agents, employees, assigns, and all persons in active concert of participation with them from engaging in any employment practice which discriminates on the basis of age or disability; and

10. Grant such additional or alternative relief as may appear to the court to be just and equitable.

## <u>JURY TRIAL DEMAND</u>

Plaintiffs, ELSA BETANZOS, KIMBERLY NEWKIRK, and BETH WALKER, demand

a trial by jury on all issues so triable.

 Dated September 17, 2021.

**Sconzo Law Office, P.A.**
3825 PGA Boulevard, Suite 207
Palm Beach Gardens, FL 33410
Telephone: (561) 729-0940
Facsimile: (561) 491-9459

By: **/s/ Gregory S. Sconzo**
GREGORY S. SCONZO, ESQUIRE
Florida Bar No.: 0105553
SAMANTHA L. SIMPSON, ESQ.
Florida Bar No.: 1010423
**Primary Email:** greg@sconzolawoffice.com
**Primary Email:** samantha@sconzolawoffice.com
**Secondary Email:** alexa@sconzolawoffice.com